IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN HULL<br>        Plaintiff,<br><br>    v.<br><br>FLEETWOOD ENTERPRISES, INC.,<br>and CATERPILLAR, INC. and<br>ALLISON TRANSMISSION and<br>SPARTAN CHASSIS,<br>        Defendants. | )<br>)<br>)<br>)  Civil  Action  No.  06-1669<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                              February **22**, 2008

      This is an action for breach of warranty.  Plaintiff, John

Hull, alleges that defendants[1] failed to cure certain defects of

a recreational vehicle in violation of the Magnuson-Moss Federal

Trade Commission Act, 15 U.S.C. § 2301, et seq., ("Magnuson-Moss

Act"), the Pennsylvania Uniform Commercial Code, 13 Pa.Cons.Stat.

§ 2101, et seq. (the "UCC"), and the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 Pa.Cons.Stat. § 201-1,

et seq. ("UTPCPL").  Plaintiff seeks to recover the purchase

price of the vehicle, attorneys' fees, costs, and treble damages.

---

      [1]      Plaintiff has withdrawn all claims against
            Fleetwood Enterprises, Inc., Spartan Chassis, Inc.
            and Allison Transmission, Inc. [See Doc. No. 92.]
            Caterpillar, Inc. is the only remaining defendant in
            this action.

Caterpillar, Inc. ("Caterpillar"), the manufacturer of the vehicle's engine, has filed a motion for summary judgment[2] [Doc. No. 70] arguing that certain automotive tests "rule out any potential nonconforming aspect of the subject engine." According to Caterpillar, plaintiff has presented no evidence that the engine is defective.

For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed. In August of 2005, plaintiff purchased a new Fleetwood Revolution LE recreational vehicle (the "vehicle"). Caterpillar manufactured the vehicle's engine, a Caterpillar C-9 diesel engine. This engine is specified to produce 400 horsepower at 2100 rotations per minute. In Caterpillar's Limited Warranty, which covers the vehicle for either the first 60 months or 6000 hours, Caterpillar warranted the C9 engine to be free from defects in material and workmanship. This warranty required Caterpillar to correct any defect in material or workmanship found during the warranty period.

---

[2]     Caterpillar has also requested oral argument on its motion pursuant to W.D.PA.LR. 7.1F. [Doc. No. 94]. The motion for oral argument is denied.

2

Plaintiff originally filed this action in Pennsylvania state court. Defendants removed the action to this court. In the complaint, plaintiff asserts claims for breach of warranty under the Magnuson-Moss Act (Count I), the Pennsylvania UCC (Count II), and the Pennsylvania UTPCPL (Count III). Specifically, plaintiff alleges that the vehicle's engine, among other things, had "nonconformities." Although the complaint is devoid of specific "nonconformities" with respect to the engine, plaintiff described various "intermittent problems" with the vehicle's engine at his deposition. For example, he stated that the engine had a "faulty program," and that the acceleration was "sluggish." Plaintiff further complained of "smoke" and that the engine would "miss and kind of backfire."

On August 24, 2007, certain automotive experts conducted several tests of the vehicle at a certified automotive facility. These tests included a subjective inspection of the vehicle, a road test, a dynometer diagnostic test, and a blow-by test. Bill Naugle, a retired Caterpillar engineer and defendant's expert, prepared a report describing the dynometer diagnostic test, the blow-by test, and the results of these tests.

According to Caterpillar's expert, a dynometer diagnostic test ("dyno test") measures the actual output of an engine and the power required to rotate the dynometer using the vehicle's rear drive wheels. According to the report, the dyno test

3

conducted on August 24, 2007 indicated that the engine was "performing well within the specifications."

The report also states that a blow-by test examines piston ring and liner wear. The blow-by test conducted on August 24, 2007 resulted in 461 cubic feet per minute ("cfm") of blow-by at 2100 rotations per minute ("RPM"). According to Caterpillar's expert report, this result is within an acceptable range and indicates that there is no evidence of piston ring and/or liner wear.

Plaintiff's expert, Phillip Riggs, also commented on these tests in his report and stated that the "[o]nly accurate method of determining engine performance is in [the] report of the [the] Dyno Test performed by [the] Cat technician." In opposing Caterpillar's motion for summary judgment, however, plaintiff disputes that the test results are conclusive that no engine defect exists. Plaintiff contends that there is additional evidence that the engine exhibited defects. Specifically, plaintiff points to his deposition testimony regarding the "intermittent" problems he experienced while operating the vehicle. Plaintiff also points to various repairs made to the engine, other reports and test results, as well as a recall Caterpillar issued on the engine's programming. In addition to his deposition testimony, plaintiff specifically relies on

numerous documents including the following repair documents and inspection reports:

- On or about December 21, 2004, Caterpillar issued a recall on the engine's programming;

- On or about September 16, 2005 and October 4, 2005, repairs were made to the engine;

- On or about January 12, 2006, a Caterpillar dealer recorded the following: "Transmission Data Link Derate," "Low Boost Pressure," "High Exhaust Gas Temperature Derate" and "Very High Exhaust Gas Derate";

- On or about May 23, 2006, representatives from the manufacturer of the vehicle's transmission inspected the vehicle and observed a "vibration" which could not be attributed to the vehicle's transmission;

- On or about July 22, 2006, a Caterpillar dealer repaired the engine's programming;

- On or about August 29, 2007, representatives from the manufacturer of the vehicle's transmission inspected the vehicle again and noted "bumps" which could be felt inside the coach during the road test;

- On or about November 8, 2006, a mechanic inspected the vehicle and observed the following: a "vibration when transmission shifting," "[e]ngine acceleration seems sluggish," and "oil on the outside of oil pan;" and

• On or about August 24, 2007, plaintiff's expert, Phillip Riggs, observed "oil on outside of pan" and "[v]erified failure: active oil leak from oil pan to block mating area."

Caterpillar disputes this evidence arguing that the dyno test and blow-by test conducted on August 24, 2007 conclusively rule out any potential nonconforming aspect of the engine.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Id. at 248. Similarly, summary judgment is improper so long as the dispute over the material

6

facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id.

It is on this standard that the court has reviewed the parties' motions and responses thereto. Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that genuine issues of material fact exist in this matter.

III. DISCUSSION

In its motion for summary judgment, Caterpillar contends that for plaintiff to succeed on any of his breach of warranty claims, he must establish the threshold issue that the engine is defective or "nonconforming." Caterpillar argues that plaintiff has failed to provide any such evidence. Caterpillar relies exclusively upon the results of the tests and the purported concession of plaintiff's expert that the dyno test is the only accurate method of determining engine performance. Caterpillar also contends, without citing any legal authority, that "evidence of an alleged defect must be supported by expert testimony." Caterpillar also discounts plaintiff's deposition testimony as "conclusory statements by a lay witness." According

to Caterpillar, because the test results were within an "acceptable range," plaintiff has failed to present any evidence that the engine was defective or "nonconforming."

Plaintiff, however, contends that sufficient evidence exists to establish genuine issues of material fact regarding the engine's defects and Caterpillar's failure to remedy them. Plaintiff relies on his own testimony regarding the "intermittent" problems he observed related to the engine, including a "faulty program," "smoke," the "sluggish" acceleration, and the "miss" and "backfire." Plaintiff argues that such "intermittent" problems could not be detected by the dyno test or the blow-by test. As outlined above, plaintiff also relies on the multiple repairs, other reports and inspections, and Caterpillar's recall on the engine's programming. Plaintiff also testified that certain problems still exist. According to plaintiff, the evidence of record creates genuine issues of material fact to preclude summary judgment. The court agrees.

Plaintiff asserts claims for breach of warranty under the Magnuson-Moss Act, the UCC and UTPCPL. The Magnuson-Moss Act was enacted to protect consumers and address concerns about manufacturers and others that do not fulfill the obligations of their warranties. See Harrison v. Nissan Motor Corp., 111 F.3d 343, 351 (3d Cir. 1997). Under the Act, a warrantor who has provided a written warranty to a consumer when notified of a

8

product defect, malfunction or failure to conform to the written warranty must "remedy" the problem "within a reasonable time and without charge." 15 U.S.C. 2304(a)(1). Likewise, failing to comply with the terms of any written guarantee or express warranty is actionable under the Pennsylvania UCC and the UTPCPL. See 13 Pa.C.S.A. § 2313; 73 Pa. C.S.A. § 201-2(4)(xiv); see also Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 647 (Pa. Super. Ct. 1999).

Under Pennsylvania law, in order to prove a breach of warranty, a party must prove, either by direct or circumstantial evidence, that the product was defective. Kruger v. Subaru of America, Inc. 996 F.Supp. 451, 454 (E.D.Pa. 1998)(citing Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)). In this case, the court finds that there is both direct and circumstantial evidence to create genuine issues of material fact regarding whether the vehicle's engine exhibited defects which Caterpillar failed to remedy. Specifically, plaintiff testified regarding the various "intermittent" problems he experienced. Plaintiff has also presented numerous repair documents and inspection reports of the vehicle which note the following problems: a vibration, oil on the outside of the oil pan, "low boost pressure," "high exhaust gas temperature," "very high exhaust gas temperature derate," and "sluggish" acceleration. Plaintiff points to documentation and evidence of

9

multiple repairs to the engine, including, <u>inter alia</u>, a Caterpillar dealer's repairs to the engine's programming, an issue he raised at his deposition. Despite this and other repairs, plaintiff testified that certain problems still exist. Viewing this evidence in the light most favorable to plaintiff, plaintiff has presented direct and circumstantial evidence to create a genuine issue of material fact regarding a defect with the engine. The court finds that the evidence of record is such that a reasonable jury could find an engine defect.

In accordance with the applicable standard of review, plaintiff has produced sufficient evidence to raise a genuine issue of material fact regarding a defect with the engine and Caterpillar's efforts to remedy it and to comply with the terms of its warranty.

## IV. CONCLUSION

Caterpillar's motion for summary judgment [Doc. No. 70] is denied. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN HULL                          )
        Plaintiff,                 )
                                   )
    v.                             )   Civil Action No. 06-1669
                                   )
FLEETWOOD ENTERPRISES, INC.,       )
and CATERPILLAR, INC. and          )
ALLISON TRANSMISSION and           )
SPARTAN CHASSIS,                   )
        Defendants.                )

O R D E R

Therefore, this 22 day of February, 2008, IT IS HEREBY

ORDERED that defendant Caterpillar, Inc.'s motion for oral

argument [Doc. No. 94] is DENIED.  IT IS FURTHER ORDERED that

Caterpillar Inc.'s motion for summary judgment [Doc. No. 70] is

DENIED.

BY THE COURT:

J.

cc:   All Counsel of Record